FILED IN OPEN COURT
11·13·19
CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 3:19-cr-207-J-39MCR

18 U.S.C. § 371

QUALLA MILLER
EARL SMALLS
MARIO CORREA JACKSON

42 U.S.C. § 1320a-7b(b)(1)(A)
42 U.S.C. § 1320a-7b(b)(2)(B)
18 U.S.C. § 1957

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
### (Conspiracy)

### A.   Introduction

At times material to this Indictment:

1.      Qualla Miller ("Miller") was a resident of the Middle District of Florida and a patient recruiter for CASEPARK, Park and King Pharmacy, and other co-conspirator pharmacies.

2.      Earl Smalls ("Smalls") was a resident of the Middle District of Florida and a patient recruiter for CASEPARK, Park and King Pharmacy, and other co-conspirator pharmacies.

3.     Mario Correa Jackson ("Jackson") was a member of the U.S. Navy, a resident of the Middle District of Florida, and a patient recruiter for Smalls.

4.     Co-conspirator Felmor Agatep ("Dr. Agatep") was a medical doctor licensed in Florida who resided and practiced medicine in the Middle District of Florida and was not a TRICARE provider.  As part of his practice, Dr. Agatep prescribed compounded creams to patients whose prescriptions were filled at Park and King Pharmacy, and other pharmacies.

5.     CASEPARK, owned and operated by co-conspirator Scott Balotin ("Balotin"), was a marketing firm located in the Middle District of Florida that employed sales representatives to market compounded medications, specifically creams for pain and scars, among others to beneficiaries of health care benefit programs. CASEPARK focused its promotional efforts on TRICARE beneficiaries based upon an understanding and belief that TRICARE would pay claims for these expensive compounded creams.  CASEPARK operated out of a residence in Jacksonville, Florida (CASEPARK-residence), and out of a storefront location in Jacksonville, Florida (CASEPARK-storefront).

2

6.     Park and King Pharmacy, owned and operated by co-conspirator Greg Carter ("Carter"), was a retail and compounding pharmacy that provided compounded drugs to TRICARE beneficiaries.   Compounded drugs may be prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient or when a patient cannot consume medication by traditional means.

7.     TRICARE was a federal health insurance program that provided coverage for U.S. military members, retirees, and their family members. TRICARE was a federal health care benefit program, as defined by Title 18, United States Code, Section 24(b), and a federal health care program, as defined in Title 42, United States Code, Section 1320a-7b(f).   Individuals who received benefits from TRICARE were commonly referred to as TRICARE beneficiaries.

## B.  The Conspiracy

8.     Beginning in or about May 2014, and continuing through and including in or about August 2015, in the Middle District of Florida and elsewhere, the defendants,

QUALLA MILLER,
EARL SMALLS,
and
MARIO CORREA JACKSON,

3

did knowingly and willfully combine, conspire, confederate and agree with others, both known and unknown to the Grand Jury, including Balotin, Carter, and Dr. Agatep, to commit certain offenses against the United States, specifically:

    a.    the offering and paying of health care kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(2)(B);

    b.    the soliciting and receiving of health care kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A); and

    c.    health care fraud, in violation of 18 U.S.C. § 1347.

## C.  **Manner and Means**

9.    The manner and means by which the defendants and their coconspirators sought to accomplish the purposes of the conspiracy included, among other things:

    a.    It was a part of the conspiracy that Carter would and did own and operate Park and King Pharmacy, which filled retail prescriptions and produced compounded medications, particularly expensive creams, prescribed by Dr. Agatep and other physicians.

    b.    It was further part of the conspiracy that Balotin would and did own and operate CASEPARK, a marketing firm.  CASEPARK

4

recruited patients to obtain prescriptions for expensive compounded creams that would be paid for by TRICARE and other health benefit programs.

      c.     It was further part of the conspiracy that Carter would and did cause Park and King Pharmacy to enter into an unlawful marketing agreement with Balotin at CASEPARK.   Carter agreed to pay and did in fact pay illegal kickbacks to Balotin and CASEPARK recruiters, a percentage of the proceeds of claims paid to Park and King Pharmacy by TRICARE and other health care benefit programs, after expenses, for prescriptions for compounded medications that CASEPARK recruiters directed to Park and King Pharmacy to be filled.

      d.     It was further part of the conspiracy that conspirators would and did bill and cause to be billed TRICARE and other health care benefit programs for compounded creams Dr. Agatep and other physicians prescribed to TRICARE beneficiaries, among others, which prescriptions Park and King Pharmacy and other pharmacies filled.

      e.     It was further part of the conspiracy that Carter would and did open and control bank accounts in the name of Park and King Pharmacy into which funds from TRICARE and other health benefit programs were received as a result of claims for payment Park and King Pharmacy submitted

5

for compounded cream prescriptions marketed by CASEPARK and other conspirator marketers, and written by Dr. Agatep and other physicians.

f. It was further part of the conspiracy that conspirators Miller, Smalls, and Jackson would and did open, control and use bank accounts into which illegal kickbacks from Park and King Pharmacy and other conspirator pharmacies were deposited.

g. It was further part of the conspiracy that Balotin via CASEPARK, would and did employ sales representatives to recruit patients to be seen by physicians and provide said patients with preprinted prescriptions featuring compounded medications with high rates of reimbursement for such generalized ailments as pain and scars. The physicians, including Dr. Agatep, would and did prescribe compounded creams, which prescriptions were routed through Park and King Pharmacy, and other conspirator pharmacies to be filled.

h. It was further part of the conspiracy that the conspirators would and did direct CASEPARK-recruited patients, many of whom were TRICARE beneficiaries, to Dr. Agatep and other physicians to obtain prescriptions for compounded creams, which prescriptions Park and King and other conspirator pharmacies filled.

6

i. It was further part of the conspiracy that Dr. Agatep, working at the direction of other conspirators, would and did call high volumes of CASEPARK recruited patients, many of whom were TRICARE beneficiaries, and prescribe compounding creams, which prescriptions were filled at Park and King Pharmacy and other conspirator pharmacies.

j. It was further part of the conspiracy that conspirators would and did agree to pay, and did in fact pay, illegal kickbacks to Dr. Agatep, equal to approximately $100 per patient for prescriptions for compound medications written by Dr. Agatep and filled by Park and King Pharmacy and other conspirator pharmacies for CASEPARK recruited patients.

k. It was further part of the conspiracy that Miller, Smalls, Jackson and other conspirators would and did receive kickbacks from Carter, when TRICARE paid Park and King Pharmacy for a prescription obtained by an individual Miller, Smalls or Jackson recruited.

l. It was further part of the conspiracy that Miller, Smalls, Jackson and other conspirators would and did in fact, use the proceeds from TRICARE to pay conspirators as kickbacks for obtaining prescriptions for compounded creams, which prescriptions were filled at Park and King Pharmacy, and other pharmacies.

7

m.     It was further part of the conspiracy that the conspirators and others would and did perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

### D.     Overt Acts

10.     In furtherance of the conspiracy and to effect the objects thereof, the conspirators committed and caused to be committed, within the Middle District of Florida and elsewhere, the following overt acts, among others:

a.     On or about the dates set forth below, each of which constitutes a separate overt act, the conspirators agreed to solicit and receive and did in fact solicit and receive remuneration in the approximate amounts listed below in return for submitting compound prescriptions on behalf of TRICARE beneficiaries to Park and King Pharmacy, which prescriptions were filled at Park and King Pharmacy and claims for which were paid in whole or in part by a federal health care benefit program:

| Overt Act | Defendant | Date | Approximate Kickback Amount |
|---|---|---|---|
| a.1 | EARL SMALLS | January 21, 2015 | $29,865.26 |
| a.2 | QUALLA MILLER | February 18, 2015 | $18,318.39 |
| a.3 | MARIO CORREA JACKSON | February 19, 2015 | $9,000.00 |

All in violation of 18 U.S.C. § 371.

## COUNTS TWO THROUGH FOUR
### (Soliciting and Receiving Health Care Kickbacks)

#### A.  Introduction

1.     The Grand Jury hereby realleges Paragraphs 1 through 7 and 9 of

Count One of this Indictment and incorporates such paragraphs by this

reference as though fully set forth herein.

#### B.  Offense

2.     On or about the dates listed below, in the Middle District of

Florida and elsewhere, the defendants,

QUALLA MILLER,
EARL SMALLS,
and
MARIO CORREA JACKSON,

did knowingly and willfully solicit and receive remuneration, that is, kickbacks

and bribes, directly and indirectly, overtly and covertly, in cash and in kind,

including by check, in return for referring an individual to a person for the

9

furnishing and arranging of any item or service for which payment may be made in whole and in part, under a Federal health care program, specifically remunerations in the approximate amounts listed below for the submission of claims for compounded medication creams on behalf of TRICARE - beneficiaries to a pharmacy for the furnishing and arranging for the furnishing of prescription compounded creams, for which payment may be made in whole and in part by TRICARE, as set forth below:

| Count | Defendant | Approximate Date | Approximate Kickback Amount |
|---|---|---|---|
| TWO | EARL SMALLS | January 21, 2015 | $29,865.26 from Park & King Pharmacy |
| THREE | QUALLA MILLER | February 18, 2015 | $18, 318.39 from Park & King Pharmacy |
| FOUR | MARIO CORRREA JACKSON | February 19, 2015 | $9,000.00 from Earl SMALLS |

In violation of 42 U.S.C. § 1320a-7b(b)(1)(A) and 18 U.S.C. § 2.

## COUNTS FIVE AND SIX
### (Offering and Paying of Health Care Kickbacks)

### A. Introduction

1.     The Grand Jury hereby realleges Paragraphs 1 through 7 and 9 of Count One of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

10

## B.  Offense

2.      On or about the dates listed below, in the Middle District of
Florida and elsewhere, the defendants,

### EARL SMALLS
### and
### MARIO CORREA JACKSON,

did knowingly and willfully offer and pay any remuneration (including

kickbacks and bribes) directly and indirectly, overtly and covertly, in cash and

in kind, to any person to induce such person to purchase and order, and

arrange for and recommend purchasing and ordering any good, service, and

item for which payment may be made in whole and in part under a Federal

health care program, specifically remuneration in the approximate amounts to

induce TRICARE beneficiaries to arrange for the writing of prescriptions for

compounded creams, which prescriptions were filled at Park and King, and

claims for which were paid in whole or in part by TRICARE:

| Count | Defendant | Approximate Date | Approximate Kickback Amount |
|-------|-----------|------------------|-----------------------------|
| FIVE | MARIO CORREA JACKSON | February 2, 2015 | $200 payment made into the Navy Federal Credit Union Account of J.R. ending in 8663 |
| SIX | EARL SMALLS | February 19, 2015 | $9,000 payment to Mario Correa Jackson via check number 2082 drawn on Smalls' Vystar Credit Union Account ending in 6965 |

In violation of 42 U.S.C. § 1320a-7b(b)(2)(B) and 18 U.S.C. § 2.

## COUNTS SEVEN AND EIGHT
### (Illegal Monetary Transactions)

### A.  Introduction

1.    The Grand Jury hereby realleges Paragraphs 1 through 7 and 9 of

Count One of this Indictment and incorporates such paragraphs by this

reference as though fully set forth herein.

### B.  Offense

2.    On or about the dates set forth below, in the Middle District of

Florida and elsewhere, the defendants,

QUALLA MILLER
and
EARL SMALLS,

12

did knowingly engage and attempt to engage in the monetary transactions set
forth below, in and affecting interstate commerce, in criminally derived
property of a value greater than $10,000, which property was, in fact, derived
from specified unlawful activity, namely the receipt and offering of health care
kickbacks, in violation of 42 U.S.C. §§ 1320a-7b(b)(2)(B) and 1320a-
7b(b)(1)(A), specifically:

| Count | Defendant | On or About Date | Monetary Transaction |
|-------|-----------|------------------|----------------------|
| SEVEN | EARL SMALLS | January 21, 2015 | The withdrawal of $20,000 cash from Smalls' VyStar Credit Union Account ending in 6965 |
| EIGHT | QUALLA MILLER | February 20, 2015 | Aid and abet the withdrawal of $12,300 cash from R.R.'s Wells Fargo Account ending in 7833 |

In violation of 18 U.S.C. §§ 1957 and 2.

## FORFEITURE

1.    The allegations contained in Count One are incorporated by
reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §
981(a)(1)(C), 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(7).

2.    Upon conviction of a conspiracy to commit health care fraud, in
violation of 18 U.S.C. § 1347, in violation of 18 U.S.C. § 1349, the defendants,

13

QUALLA MILLER,
EARL SMALLS,
and
MARIO CORREA JACKSON,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28

U.S.C. § 2461(c), any property, real or personal, which constitutes or is

derived from proceeds traceable to the offense; and pursuant to 18 U.S.C.

§ 982(a)(7), any property, real or personal, that constitutes or is derived,

directly or indirectly, from gross proceeds traceable to the commission of the

offense.

3.      The allegations contained in Counts Two through Four are

incorporated by reference for the purpose of alleging forfeiture pursuant to 18

U.S.C. § 982(a)(7).

4.      Upon conviction of a violation of 42 U.S.C. § 1320a-7b(b)(1)(A),

as alleged in Counts Two through Four, the defendants,

QUALLA MILLER,
EARL SMALLS,
and
MARIO CORREA JACKSON,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any

property, real or personal, that constitutes or is derived, directly or indirectly,

from gross proceeds traceable to the commission of the offense.

14

5.     The allegations contained in Counts Five and Six are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(7).

6.     Upon conviction of a violation of 42 U.S.C. § 1320a-7b(b)(2)(B), as alleged in Counts Five and Six, the defendants,

EARL SMALLS
and
MARIO CORREA JACKSON,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

7.     The allegations contained in Counts Seven and Eight are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(1).

8.     Upon conviction of a violation of 18 U.S.C. § 1957, as alleged in Counts Seven and Eight, the defendants,

QUALLA MILLER
and
EARL SMALLS,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

15

9.      The property to be forfeited includes, but is not limited to, the

following:

a.      The sum of at least $138,044.49 in proceeds
defendant QUALLA MILLER obtained as a result
of the commission of the offenses charged in Counts
One, Three and Eight;

b.      The sum of at least $97,448.72 in proceeds
defendant EARL SMALLS obtained as a result of
the commission of the offenses charged in Counts
One, Two, Six and Seven; and

c.      The sum of at least $34,200.00 in proceeds
defendant MARIO CORREA JACKSON obtained
as a result of the commission of the offenses charged
in Counts One, Four and Five.

10.     If any of the property described above, as a result of any act or

omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third
party;

c.      has been placed beyond the jurisdiction of the court;

16

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty

the United States shall be entitled to forfeiture of substitute property pursuant

to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), and as

incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL,

_____
Foreperson

MARIA CHAPA LOPEZ
United States Attorney

By:   _____
Julie Hackenberry
Assistant United States Attorney

By:   _____
Amanda L. Riedel
Assistant United States Attorney
Deputy Chief, Criminal Division

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Jacksonville Division

## THE UNITED STATES OF AMERICA

vs.

QUALLA MILLER,
EARL SMALLS,
and
MARIO CORREA JACKSON

## INDICTMENT

Violations:  18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(1)(A)
42 U.S.C. § 1320a-7b(b)(1)(A)
18 U.S.C. § 1957

A true bill,

_____
Foreperson

Filed in open court this 13th day

of November 2019.

_____
Clerk

Bail $_____